**AFFIDAVIT OF SPECIAL AGENT DEAN J. TRAMONTANA**

I, Dean Tramontana, being duly sworn, hereby depose and state:

1. I am a Special Agent of the United States Secret Service (the "Secret Service"), Department of the Homeland Security, and have been so employed since September 2002.

2. My role within the Secret Service is two fold. First, Special Agents of the Secret Service are tasked with the protection of the President and First Lady of the United States, the Vice President, former Presidents and foreign dignitaries who visit the U.S. Second, Special Agents of the Secret Service are tasked to investigate financial crimes against financial institutions and individuals such as, but not limited to, counterfeit checks, wire fraud, counterfeit United States currency, bank fraud, and credit card fraud. I have received extensive training in each of these areas.

3. Since September 2002, I have been assigned as a member of the New England Electronic Crimes Task Force (NET) based in the Boston Field Office of the Secret Service. This Task Force is comprised of Special Agents of the Secret Service and Officers of the Massachusetts State Police. The function of the Task Force is to investigate financial crimes perpetrated by organized groups to include investigations into violations of 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 513 (a), 18 U.S.C. § 1029 and

18 U.S.C. § 1956.  As an agent of the Secret Service, I have been the case agent in several complex financial crime investigations which include responsibilities such as preparing affidavits for search and arrest warrants, utilizing informants and confidential witnesses, and implementing successful raid plans.

4.  I am aware that Title 18, United States Code, Section 1343, makes it a crime for anyone to devise or intend to devise any scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, transmits or cause to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice.

5.  This affidavit is based on information gathered by special agents of the Secret Service New England Electronic Crimes Task Force (NET), officers of the Watertown MA Police Department, as well as information gathered through my own investigation.  However, this affidavit is not intended to set forth all the information that I or other law enforcement personnel or bank investigators have learned during the course of this investigation but that which is sufficient to set forth probable cause in support of a criminal complaint charging DANA WHIDBEE ("WHIDBEE"), date of birth 07/03/63, social security

number \*\*\*-\*\*-3288, 58 Lexington Ave., Cambridge, MA with wire fraud in violation of 18 U.S.C. §1343.

*BACKGROUND*

6. The scheme, as set forth below in more detail, involved WHIDBEE fraudulently obtaining funds which were then wire transferred to bank accounts she controlled. She obtained these funds by applying for downpayment monies from non-profit companies, posing as an agent for eligible and legitimate home buyers. In truth and in fact, there were no buyers and WHIDBEE provided fictitious names and personal identifiers, including dates of birth and Social Security Numbers, to obtain the monies for the down payments.

7. On or about January 6, 2005, Andrew Hunt, Bank Investigator, Citizens Bank, 28 State Street, Boston, MA 02109, filed a Suspicious Activity Report (SAR). The information in the SAR indicated that between 12/21/04 and 12/31/04, WHIDBEE's personal bank account received two (2) wire transfers totaling $46,400 from AmeriDream, Inc.

8. AmeriDream, Inc. is a non-profit organization that offers financial programs that assist under-served groups with affordable housing opportunities.

9. On December 20, 2004, WHIDBEE submitted an application to Ameridream via fax, applying for $20,000 on behalf of an

alleged perspective buyer by the name of Anne Schorne. Additionally, on December 28, 2004, WHIDBEE submitted an application to Ameridream via fax, applying for $26,400 on behalf of an alleged perspective buyer by the name of Robin Carteau.

10. In both instances, WHIDBEE supplied a settlement agent confirmation which supplied instructions regarding the wire transfer of funds. In both instances, the bank account into which the funds were to be wired was in fact the personal account of WHIDBEE.

11. On January 4, 2004, Provident Bank, on behalf of AmeriDream, attempted to recall the wires for fraudulent activity. AmeriDream requested that the wires be recalled upon discovering that the wires were not deposited into title companies as required and that the addresses on the assistance applications did not appear to be legitimate.

12. However, prior to the wires being recalled, WHIDBEE was able to wire out $18,000 from the bank accounts to a personal money market account held by her at GE Capital.

13. On March 18, 2005, Detective Joseph Kelly and Police Officer Mark Leitner of the Watertown MA Police Department (WPD) and your affiant responded to the Citizens Bank located at 631 Mount Auburn St., in Watertown, MA, where WHIDBEE was to appear to close out the personal and business accounts she controlled.

14.  Your affiant was present when WHIDBEE met with Branch Manager Jane Gilerti to discuss closing out her Citizens Bank accounts. Your affiant identified myself as a Special Agent of the U.S. Secret Service and explained that I had been investigating several fraudulent wire transfers that were deposited into WHIDBEE's Citizens Bank accounts. WHIDBEE voluntarily agreed to discuss the matter at the WPD.

15.  Before any questioning took place at the Watertown Police Station, Detective Kelly read WHIDBEE the Watertown Police Department Detective Division Miranda Warning, which she advised that she read, understood and signed. In addition, your affiant advised WHIDBEE of her Miranda Warnings which WHIDBEE read, understood, and signed. WHIDBEE stated that she would speak without an attorney present at that time. I explained that I had been investigating the wire transfers into her Citizens Bank accounts for some time and that there were several companies that claimed she was submitting fraudulent applications to them. SA Tramontana asked WHIDBEE to explain the fraudulent wire transfers. At that time, WHIDBEE began to breakdown and stated that she was out of money and she couldn't pay her rent or make her bills. WHIDBEE stated that initially she legitimately setup her business to assist homebuyers to secure down payments for a home. However, in February 2005, she submitted fraudulent

applications online and by facsimile to several non-profit organizations providing home down-payment assistance. She stated "I created fictitious names and social security numbers for the applications I submitted". She submitted approximately thirty (30) - forty (40) applications and spent approximately $40,000 of the funds she received from the fictitious applications. WHIDBEE stated she didn't target the non-profit companies, she viewed them simply as a way for her to help a clients and herself buy homes. WHIDBEE provided a written statement and consented to search of her computer, which she used to submit the online applications.

16. Your affiant followed WHIDBEE to her residence located at 58 Lexington Ave., in Cambridge, MA and we were met by Cambridge Detective Jim Dwyer. Detective Dwyer and I accompanied WHIDBEE to her office to where her computer was located. In plain view on the floor there were three (3) Massachusetts Escrow LLC checks # 116, 119 and 126. WHIDBEE explained that these checks were made payable to National Home which she intended to use to repay National Home for the fraudulent applications. I asked WHIDBEE if I could take the checks and WHIDBEE stated "Yes".

17. Based on the above facts, your affiant has probable cause to believe that Dana WHIDBEE did, having devised or

intending to devise a scheme and artifice to defraud, and for obtaining money by means of false or fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals for the purpose of executing such scheme and artifice in violation of Title 18 U.S.C. § 1343.

I declare under penalty of perjury that the foregoing is true and correct.

Dean J. Tramontana
Special Agent
United States Secret Service

Subscribed and sworn to before me this 4th day of April, 2005. @ 5:20 P.M

MARIANNE B. BOWLER
United States Magistrate Judge